**Jesse Dale FOX, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–00–01367–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 31, 2002.

Discretionary Review Refused Nov. 6, 2002.

---

**78.** *Id.* at 440; *see also Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

**79.** *In re J.F.C.,* 96 S.W.3d at 264.

**80.** *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

George McCall Secrest, Jr., Bennett Secrest & Myers, Houston, for appellant.

Carmen Castillo Mitchell, for appellee.

Panel consists of Justices ANDERSON, HUDSON, and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

Appellant Jesse Dale Fox challenges his conviction and six-year prison sentence for the aggravated sexual assault of his nine-year-old stepdaughter. We hold the trial court reversibly erred by excluding appellant's offer of evidence of similar sexual-abuse allegations made against him by the complainant's young sisters and by preventing cross-examination that would have shown bias of the outcry witness. We reverse appellant's conviction and remand for a new trial.

### I. FACTUAL AND PROCEDURAL HISTORY

At the time of the outcry in this case, appellant was married to Joyce Fox. Appellant and Ms. Fox had two children together, A.F. and J.F. Joyce Fox also had two daughters, E.A. and N.R., from previous relationships with two different men. N.R., the younger of these two girls, is the complainant in this case. At the time of the outcry, E.A. was eleven years old, N.R. was nine years old, A.F. was six years old, and J.F. was one year old.[1] The incidents

---

1. All ages of the children stated in this opinion are their ages on February 25, 1999.

of sexual abuse allegedly began some time in 1995 or 1996 and allegedly ended approximately six months before the outcry.

In appellant's criminal trial for aggravated sexual assault of N.R., Ms. Fox testified that, in February of 1999, N.R., then age nine, told her that she wanted to commit suicide and that "she knew she was going to go to hell so what was the point." Ms. Fox testified N.R. and she were home by themselves at that time and N.R. was crying. Although N.R. did not explain in any more detail what was troubling her, Ms. Fox felt this incident was quite serious and concluded that N.R. was a child with an outcry. Ms. Fox then made an appointment for N.R. to see her primary-care physician to seek a referral for counseling.

According to Ms. Fox, when she and N.R. arrived at the doctor's office, N.R. told her that appellant had touched her in places she did not want to be touched. Ms. Fox told the doctor about N.R.'s allegations, and the doctor said she would contact Child Protective Services. Later that day, on February 25, 1999, a police officer contacted Ms. Fox, who took N.R. to the police detectives' office to make a statement. Police officers interviewed N.R. and videotaped her statement.

N.R.'s older sister,[2] E.A., testified during the punishment phase as follows: (1) that her mother, Ms. Fox, picked her up from school one day; (2) that her mother said that she was taking E.A. to the police department and that E.A. would have to tell the police what happened; (3) that her mother said that N.R. was at the police department and that "[N.R.] said this happened to you too"; (4) that Ms. Fox told E.A. what E.A. was going to have to say to the police; and (5) that Ms. Fox told E.A. that she would have to tell the police what

appellant had done to her. On that same day, A.F., N.R.'s younger sister, made sexual-abuse allegations against appellant at the police detectives' office. Police officers interviewed and videotaped all three girls making sexual-abuse allegations against appellant.

From 1995 to 1996, appellant, Ms. Fox, and the children lived in Pasadena. From 1996 until the summer of 1998, they lived in New Caney. N.R. testified that, during this period, appellant would enter her bedroom and stick his finger in her vagina. N.R. told a pediatric nurse practitioner that this happened "[e]veryday, but if he worked late he wouldn't do it." N.R. testified that appellant never said anything and that she acted as if she were asleep because she thought she would get in trouble. At all material times, N.R. slept in the bottom bunk bed with A.F., and E.A. slept in the top bunk bed. The metal bunk bed creaked. However, N.R. testified that E.A. and A.F. were always asleep and never awoke when appellant sexually abused her, and N.R. never told her sisters anything about this alleged abuse. N.R. stated that appellant did not abuse her after they all moved to Deer Park in the summer of 1998.

A month after N.R. made her outcry, in March of 1999, Ms. Fox filed for a divorce, seeking custody of both of the children that she had with appellant (A.F. and J.F.). Appellant contested Ms. Fox's request for custody of these children.

In a consolidated case, appellant was tried for the aggravated sexual assault of E.A., N.R., and A.F. In the consolidated trial, the State introduced evidence regarding the allegations of sexual abuse made by all three complainants. The jury

---

**2.** The three girls (E.A., N.R., and A.F.) are all half-sisters to one another. Throughout this opinion, we will refer to these girls as sisters.

acquitted appellant as to A.F., but it did not reach a verdict as to the other two children. The State did not seek retrial on the indictment alleging aggravated sexual assault as to E.A.; however, the State did seek retrial as to N.R.

In the second trial, the State did not seek to offer evidence regarding the sexual-abuse allegations made by E.A. and A.F.; however, appellant sought to offer this evidence to show that the offense never occurred under the defensive theory that Ms. Fox had induced her daughters to make these allegations so that she could gain leverage in her attempt to obtain custody of A.F. and J.F. in her divorce from appellant. The trial court granted the State's motion in limine and refused to allow appellant to introduce this evidence. The trial court did not allow defense witness Bettina Wright, a healthcare professional, to testify as an expert because the trial court found that she was not qualified to offer the expert testimony that appellant sought to introduce through her. E.A. and A.F. both testified that they never saw appellant come into the bedroom and sexually abuse N.R.

The trial court also granted the State's motion in limine and refused to allow appellant to introduce evidence regarding Ms. Fox's alleged extramarital affair with her boss, Bob Bridges, except that the trial court allowed appellant to briefly testify about a single incident in January of 1999. Appellant recounted how he saw Ms. Fox kissing Bridges on the front lawn of the Foxes' home and how, after this incident, Ms. Fox told appellant "to get a life, and get over it or get out." Appellant also testified that he did not sexually abuse N.R. In its rebuttal case, the State called Bridges, who testified that Ms. Fox and he had never been romantically involved.

The jury found appellant guilty of the aggravated sexual assault of N.R. During the punishment phase, E.A. testified as follows: (1) during the same time period as N.R.'s allegations, appellant put his penis in her vagina "[a] lot"; (2) appellant would climb into the top bunk at night, when N.R. and A.F. were asleep in the bottom bunk; (3) appellant would order E.A. to remove her shorts and underwear; (4) she would comply; (5) appellant would have sexual intercourse with E.A.; (6) N.R. and A.F. never woke up while appellant was having sexual intercourse with E.A.; and (7) E.A. never saw appellant come in the bedroom and sexually abuse N.R.

The jury assessed punishment at six years' confinement. Appellant filed a motion for new trial and attached the affidavits of two jurors, including the foreperson, who stated that, if they had heard the evidence of E.A.'s sexual-abuse allegations during the guilt-innocence phase, they would not have voted for a guilty verdict. The motion for new trial also contained an audiotape recording of Ms. Fox stating, among other things, that Bridges and Ms. Fox have been "in love" since before A.F. was born, that Bridges and Ms. Fox have been "involved" since before A.F. was born, and that Ms. Fox intends to be with Bridges for the rest of her life. The trial court denied appellant's motion for new trial.

## II. ISSUES PRESENTED ON APPEAL

Appellant asserts the following points of error: (1) the trial court erred by excluding evidence regarding the sexual-abuse allegations of E.A. and A.F. during the guilt-innocence phase; (2) the trial court erred by excluding the testimony of Wright, appellant's expert witness, regarding the proper protocol for interviewing child witnesses, the developmental age of N.R., and the behavior that abused children typically exhibit; (3) the trial court unconstitutionally prevented appellant

from cross-examining Ms. Fox about her extramarital affair with Bridges because this affair gave her a motive to plant the idea of sexual abuse in her daughters' minds; and (4) the trial court erred by denying appellant's motion for new trial based on Bridges's alleged perjury.

### III. STANDARD OF REVIEW

The abuse-of-discretion standard of review applies to each of appellant's points of error. *See Weatherred v. State,* 15 S.W.3d 540, 542 (Tex.Crim.App.2000) (trial court's rulings on admissibility of evidence); *Lewis v. State,* 911 S.W.2d 1, 7 (Tex.Crim.App.1995) (denial of motion for new trial); *Penry v. State,* 903 S.W.2d 715, 762 (Tex.Crim.App.1995) (qualifications and admissibility of expert testimony). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1990). In determining whether the trial court abused its discretion, we consider whether the court acted without reference to guiding rules and principles; that is, whether the court acted arbitrarily or unreasonably. *Lyles v. State,* 850 S.W.2d 497, 502 (Tex. Crim.App.1993).

### IV. ANALYSIS AND DISCUSSION

**Did the trial court abuse its discretion by excluding appellant's evidence of sexual-abuse allegations by E.A. and A.F.?**

In his first point, appellant asserts the trial court abused its discretion when it refused his request to offer evidence regarding the sexual-abuse allegations made against him by E.A. and A.F. on or about February 25, 1999. Appellant tried on several occasions during the trial to introduce this evidence in order to prove his defensive theory that the allegations of E.A., N.R., and A.F. were false and were made by these girls at the instigation of Ms. Fox, who allegedly wanted to ensure that she would get custody of A.F. and J.F. in her divorce from appellant. Appellant wanted to support this defensive theory by introducing evidence of the timing and similarity of the girls' allegations. The trial court ruled that evidence of these sexual-abuse allegations was inadmissible under Texas Rules of Evidence 401, 403, and 404. *See* TEX.R. EVID. 401, 403, 404.

### *Preservation of Error*

We first address the State's contention that appellant failed to preserve error. The trial court granted the State's motion in limine and prohibited appellant from referring to or commenting about the sexual-abuse allegations of E.A. and A.F. in front of the jury. At several points during the trial, appellant's counsel stated that he wanted to play the police videotape of the February 25, 1999 allegations by E.A. and A.F., and the trial court and counsel discussed the admissibility of the sexual-abuse allegations of these two girls. The State consistently argued that evidence of these allegations was irrelevant. The trial court consistently indicated that it believed evidence of these allegations was irrelevant. Finally, after a colloquy regarding the admissibility of this evidence, the trial court stated: "I'm not going to change my ruling on your defenses. You've preserved all this on the record. It's on the record. I've read the cases."

The State claims appellant did not comply with Texas Rule of Evidence 103(a)(2), which requires a party complaining of the exclusion of evidence to make the substance of this evidence known to the trial court by its offer, unless the substance of this evidence is apparent from the context within which questions were asked. TEX.R. EVID.

103(a)(2). Although appellant did not put on a formal offer of proof, with questions and answers, this kind of offer is not required to preserve error when the counsel seeking admission of the evidence describes the evidence to the trial court or when the content of the evidence is apparent from the context. *Fairow v. State,* 943 S.W.2d 895, 897 n. 2 (Tex.Crim. App.1997); *Moosavi v. State,* 711 S.W.2d 53, 55–56 (Tex.Crim.App.1986). After reviewing the descriptions of this evidence by appellant's counsel, and after considering the colloquies in the trial court, we conclude that the nature of the disputed evidence was apparent to all. Because the record demonstrates that the trial court knew what it was excluding when it excluded evidence of the sexual-abuse allegations of E.A. and A.F., appellant adequately preserved error and satisfied Texas Rule of Evidence 103(a)(2). *See* Tex.R. Evid. 103(a)(2); *Fairow,* 943 S.W.2d at 897 n. 2; *Moosavi,* 711 S.W.2d at 55–56; *Marathon Corp. v. Pitzner,* 55 S.W.3d 114, 143 (Tex.App.-Corpus Christi 2001, pet. filed); *Melendez v. Exxon Corp.,* 998 S.W.2d 266, 278 (Tex.App.-Houston [14th Dist.] 1999, no pet.).

### *Relevance under Rule 401*

■■■ The United States Constitution ensures that criminal defendants will have "a meaningful opportunity to present a complete defense." *Miller v. State,* 36 S.W.3d 503, 506 (Tex.Crim.App.2001) (quoting *Gilmore v. Taylor,* 508 U.S. 333, 343, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993)). Therefore, "[a] defendant has a fundamental right to present evidence of a defense as long as the evidence is relevant and is not excluded by an established evidentiary rule." *Miller,* 36 S.W.3d at 507 (holding that it was reversible error to exclude defendant's proffered testimony that pimp assaulted her shortly after she delivered cocaine to informer, when of-

fered as to her duress defense). A defendant has the right to present a vigorous defense, and the jury should be allowed to hear all admissible evidence offered by the defendant that bears on any defensive theories, so that the jury can weigh the credibility of this evidence, along with the other evidence in the case. *Id.* at 508; *United States v. McClure,* 546 F.2d 670, 672–73 (5th Cir.1977).

■■ To be relevant, evidence must be both material and probative. *Miller,* 36 S.W.3d at 507. Evidence is material if it is addressed to the proof of any fact of consequence to the determination of the action. Tex.R. Evid. 401; *Miller,* 36 S.W.3d at 507. If the proponent establishes that the proffered evidence is material, Rule 401 also requires that the proponent establish the evidence is probative—that it tends to make the existence of a material fact more or less probable than it would be without the evidence. Tex.R. Evid. 401; *Miller,* 36 S.W.3d at 507.

Appellant offered the evidence concerning the sexual-abuse allegations of E.A. and A.F. to prove his defensive theory that the sexual-abuse allegations of N.R. were untrue and were made at the instigation of Ms. Fox because she wanted to divorce appellant and obtain custody of her two children with appellant (A.F. and J.F.). Appellant contends that this evidence is relevant under the "doctrine of chances," a theory based on the concept of logical implausibility. The Court of Criminal Appeals describes the doctrine of chances as follows:

> "Without formulating any accurate test, and without attempting by numerous instances to secure absolute certainty of inference, the mind applies this rough and instinctive process of reasoning, namely, that an unusual and abnormal element might perhaps be present in one instance, but that the oftener [*sic* ]

similar instances occur with similar results, the less likely is the abnormal element likely [*sic* ] to be the true explanation of them.

. . .

[I]t is at least necessary that prior acts should be *similar*. Since it is the improbability of a like result being repeated by mere chance that carries probative weight, the essence of this probative effect is the likeness of the instance. . . . In short, there must be a similarity in the various instances in order to give them probative value."

*Plante v. State,* 692 S.W.2d 487, 491–92 (Tex.Crim.App.1985) (brackets added) (quoting 2 *Wigmore on Evidence* § 302 (Chadbourn rev. ed.1979)).

A notable example of the doctrine of chances is the "brides in the bath" case from the United Kingdom. *See Rex v. Smith,* 11 Cr.App. R. 229, 84 L.J.K.B. 2153 (1915). In that case, Smith was convicted of murdering Bessie Mundy. *Smith,* 84 L.J.K.B. at 2154. Although married to another woman, Smith had gone through a marriage ceremony with Mundy, and they had lived together as husband and wife. *Id.* at 2153–54. Mundy had inherited a significant sum of money. *Id.* at 2153. Shortly after Mundy and Smith executed mutual wills in each other's favor, Smith had a bath installed in their residence. *Id.* at 2154. Smith took Mundy to a doctor, saying that she had been having "fits"; however, the doctor found no evidence of anything other than a headache. *Id.* Soon thereafter, Mundy was found drowned in the recently installed bath. *Id.* In *Smith,* the appellate court held that evidence of the circumstances surrounding the subsequent deaths of two women was admissible in the prosecution of Smith for Mundy's murder. *Id.* at 2154–56. This evidence showed that both of these women had the following common characteristics: (1) they

went through ceremonies of marriage with Smith and lived with him as his wife; (2) they were found drowned in a bath that Smith had made sure would be available; (3) they insured their lives at Smith's suggestion; and (4) they had been taken to doctors by Smith shortly before their deaths, with Smith asserting that they were in ill health. *Id.* at 2154.

The evidence of the other brides who drowned in the bath was not offered to show Smith's criminal character or to show that Smith murdered the other two brides. *Id.* at 2155–56. Rather, this evidence was relevant and admissible under the doctrine of chances because the evidence tended to make it more probable that Smith murdered Mundy. The repetition of similar unusual events over time, involving Smith and different brides, made it possible for the jury to conclude that Mundy's drowning was caused by Smith's intentional act rather than by an accident or by a health problem. *See id.*

Texas cases have accepted the doctrine of chances. *See Morgan v. State,* 692 S.W.2d 877, 881–82 (Tex.Crim.App.1985) (under doctrine of chances, it was proper to admit evidence of defendant's touching of the genitals of complainant and her sister on occasions that were not part of the criminal conduct charged in the indictment), *overruled in part on other grounds by Gipson v. State,* 844 S.W.2d 738, 741 (Tex.Crim.App.1992); *Plante,* 692 S.W.2d at 491–93 (under doctrine of chances, defendant's other instances of failing to pay for goods and services were relevant in prosecution for theft by deception because they make it more probable that defendant never intended to pay for the goods in question); *Jones v. State,* 751 S.W.2d 682, 683–85 (Tex.App.-San Antonio 1988, no pet.) (evidence that a disproportionate number of infant deaths occurred on defendant's shift in the hospital was admissi-

ble to show that defendant intentionally caused injury to infant in question).

■ A defendant may also use the doctrine of chances defensively if the series of unusual events, alone or with other evidence, tends to negate the defendant's guilt of the crime charged. *See Jackson v. State*, 551 S.W.2d 351, 351–53 (Tex.Crim. App.1977) (trial court erroneously excluded evidence that a complainant in another criminal proceeding had erroneously identified defendant as the perpetrator and later identified as the perpetrator an inmate serving five life sentences who had also confessed to the offense with which defendant was charged in this case); *Renfro v. State*, 822 S.W.2d 757, 758–59 (Tex. App.-Houston [14th Dist.] 1992, pet. ref'd); *Holt v. United States*, 342 F.2d 163, 165–66 (5th Cir.1965); *see also 2 Wigmore on Evidence* § 304 (Chadbourn rev. ed.1979).

In this case, appellant asserted a defensive theory that the very similar allegations of E.A., N.R., and A.F. were false and were planted in these young girls' minds by their mother, Ms. Fox. These three young girls all made similar sexual-abuse allegations against appellant on the same day. E.A. and N.R. both alleged sexual abuse by appellant over the same time period. They both recounted how the abuse occurred at night while the three sisters were sleeping in the same creaky bunk bed. Both stated that this abuse occurred regularly, that the other two sisters were in the bedroom sleeping, that the other sisters did not once wake up, and that the victim did not tell the other sisters about the sexual abuse. At the request of the State, the trial court admitted this evidence in the guilt-innocence phase during the first trial.

■ Under the doctrine of chances, evidence of the allegations of E.A., N.R., and A.F. is material because it is addressed to proof of a fact of consequence—appellant's

defensive theory that the allegations of these girls were false and were planted by Ms. Fox. This evidence is also probative because it makes the existence of this defensive theory more probable than it would be without the evidence. Under the doctrine of chances, the jury could infer that these young girls made these similar and arguably implausible allegations on the same day and in a similar manner because they were making false allegations at the instigation of Ms. Fox. Therefore, this evidence is relevant. *See* Tex.R. Evid. 401; *Miller*, 36 S.W.3d at 507.

The State argues that, because appellant did not show that the allegations of E.A. and A.F. were false, evidence of these allegations is not probative of the credibility of N.R. or Ms. Fox. Even if that were so, that does not affect the admissibility of this evidence under the doctrine of chances. To this end, appellant need not prove that the allegations of E.A. and A.F. are false; rather, he need only show that they are similar, unusual occurrences that make it more probable that his defensive theory is true. *See Morgan*, 692 S.W.2d at 881–82 (indicating that, under doctrine of chances, the state did not have to show that the previous touchings of complainant and her sister were done for his sexual arousal); *Plante*, 692 S.W.2d at 491–93 (indicating that previous instances of defendant failing to pay for items purchased on credit were admissible under doctrine of chances, without any requirement of a showing that defendant never intended to pay for these other items); *Jones*, 751 S.W.2d at 683–87 (evidence of a disproportionate number of infant deaths occurring on defendant's shift in the hospital admissible to show that defendant intentionally caused injury to infant in question, even though the evidence did not prove that defendant had intentionally injured the other babies who died during defendant's

shift). Under the doctrine of chances, appellant did not have to show that the other girls' allegations were false.

### Rule 403 Analysis

 The State also argues that the trial court properly excluded the evidence of the sisters' sexual-abuse allegations under Rule 403 because the probative value of this evidence is substantially outweighed by the danger of confusing the issues. *See* Tex.R. Evid. 403. We review the trial court's Rule 403 balancing-test determination under the abuse-of-discretion standard of review. *Mozon v. State,* 991 S.W.2d 841, 847 (Tex.Crim.App.1999). We cannot simply conclude that the trial court did, in fact, conduct the required balancing and did not rule arbitrarily or capriciously. *Id.* The trial court's ruling must be measured against the relevant criteria under Rule 403. *See id.* In other words, we must look at appellant's need for the evidence in addition to determining the relevance of the evidence. *See id.*

 Rule 403 presumes the admissibility of all relevant evidence and authorizes a trial judge to exclude this evidence only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value. *Mozon,* 991 S.W.2d at 847–48. The relevant criteria in determining whether the prejudice of admitting this evidence outweighs its probative value include the following: (1) how compellingly the evidence makes a fact of consequence more or less probable; (2) the potential the evidence has to impress the jury in an irrational but nevertheless indelible way; (3) the time appellant will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; (4) appellant's need for this evidence to prove a fact of consequence, that is, whether the proponent has other probative evidence available to help establish

this fact and whether this fact relates to an issue in dispute. *Mozon,* 991 S.W.2d at 847.

 The State had the burden to demonstrate the negative attributes of the evidence and to show how these negative attributes outweigh the probative value of the evidence. *Montgomery v. State,* 810 S.W.2d 372, 389 (Tex.Crim.App.1990). The State only asserts that the probative value of this evidence is substantially outweighed by the danger of confusing the issues. However, the evidence relating to the allegations of E.A. and A.F. concerns similar allegations of sexual abuse made on the same day as N.R.'s allegations. Admission of this evidence would not create a substantial danger of confusing the issues.

We conclude that there is not a clear disparity between the degree of prejudice of the offered evidence and its probative value. *See Mozon,* 991 S.W.2d at 847–48. The offered evidence is probative of appellant's defensive theory and of whether the charged offense occurred at all. Moreover, evidence of the similar sexual-abuse allegations made by the complainant's sisters is probative of a possible plan or scheme by Ms. Fox to plant false allegations of sexual abuse in the minds of her young daughters, and appellant has a strong need for this evidence. The offered evidence would not tend to impress the jury in an irrational way. This evidence is not cumulative of other evidence. There is no other evidence available to prove the allegations that were made by E.A. and A.F. and to support appellant's defensive theory under the doctrine of chances. Thus, we find the trial court abused its discretion by excluding this evidence under Rule 403. *See Miller,* 36 S.W.3d at 509; *Kesterson v. State,* 997 S.W.2d 290, 294–95 (Tex.App.-Dallas 1999, no pet.).

### Rule 404 Analysis

Rule 404 does not provide a basis for upholding the trial court's exclusion of evidence regarding the sexual-abuse allegations made by E.A. and A.F. If evidence is otherwise admissible, Rule 404 permits the State or the criminal defendant to introduce evidence of specific instances of crimes, wrongs, or acts for purposes other than to prove a person's character. TEX.R. EVID. 404; *Tate v. State,* 981 S.W.2d 189, 193 (Tex.Crim.App.1998). A jury cannot properly convict or acquit absent the opportunity to hear proffered testimony bearing upon a defensive theory and to weigh its credibility along with other evidence in the case. *Tate,* 981 S.W.2d at 193. Appellant and the State do not assert that appellant sought introduction of the evidence in question to prove character conformity in violation of Rule 404; rather, the State has cited several cases dealing with Rule 404 and argues that the proffered evidence is not relevant. We already have held that this evidence is relevant. Moreover, we have determined that the trial court abused its discretion in excluding the evidence under Rules 401 and 403. The State has not argued, nor could it reasonably argue, that appellant sought to introduce the evidence to show character conformity. Therefore, Rule 404 does not provide a basis for upholding the trial court's exclusion of this evidence. *See id.*

### Harm Analysis

Having found error, we must assess, from the context of this error, whether it is reversible error. TEX.R.APP. P. 44.2; *Johnson v. State,* 43 S.W.3d 1, 3–4 (Tex.Crim.App.2001). In this analysis, we must first determine whether the error is constitutional. *See* TEX.R.APP. P. 44.2. A constitutional error within the meaning of Texas Rule of Appellate Procedure 44.2(a) is an error that directly offends the United States Constitution or the Texas Constitution, without regard to any statute or rule

that might also apply. *See Tate v. State,* 988 S.W.2d 887, 890 (Tex.App.-Austin 1999, pet. ref'd). With respect to the erroneous admission or exclusion of evidence, constitutional error is presented only if the correct ruling was constitutionally required; a misapplication of the rules of evidence is not constitutional error. *See id.* The trial court's erroneous exclusion of evidence in this case was a misapplication of the rules of evidence, and the admission of the evidence was not directly required by either the Texas Constitution or the United States Constitution. Therefore, we analyze harm under Rule 44.2(b) because the error is not constitutional. *See* TEX.R.APP. P. 44.2; *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998); *Tate,* 988 S.W.2d at 890.

We must assess, from the context of this error, whether it is reversible error because it affected appellant's substantial rights. TEX.R.APP. P. 44.2(b); *Johnson,* 43 S.W.3d at 3–4. Error affects a substantial right when it has a substantial and injurious effect or influence in determining the jury's verdict. *Johnson,* 43 S.W.3d at 4. In assessing the likelihood that the error adversely affected the jury's decision, we consider everything in the record, including all testimony and evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how the error might have been considered in connection with other evidence in the case. *Morales v. State,* 32 S.W.3d 862, 867 (Tex.Crim.App. 2000). We may also consider the State's theory of the case, any defensive theories, closing arguments, and voir dire. *Id.*

After examining the record in its entirety, we conclude that the trial court's erroneous exclusion of the evidence of the sexual-abuse allegations of E.A. and A.F. warrants reversal because it affected ap-

pellant's substantial rights. Appellant has a constitutional right to present evidence of a defense as long as the evidence is relevant and is not excluded by an established evidentiary rule. *Miller*, 36 S.W.3d at 507. The evidence of sexual-abuse allegations by E.A. and A.F. was critically important proof regarding appellant's defensive theory in this case. When the State introduced this evidence in the guilt-innocence phase of the first trial, the jury acquitted appellant as to one indictment and was unable to reach a verdict as to the other two. In this case, after the jury heard evidence concerning E.A.'s allegations in the punishment phase, two of the jurors, including the foreperson, signed affidavits stating that, if they had heard the evidence of E.A.'s sexual-abuse allegations during the guilt-innocence phase, they would not have voted in favor of appellant's guilt.[3]

At trial, the State presented only four witnesses. N.R. testified that, over a time period from 1995 to the summer of 1998, appellant entered her bedroom and put his finger in her vagina. N.R. told a pediatric nurse practitioner that this happened "[e]veryday, but if he worked late he wouldn't do it." N.R. testified that appellant never said anything and that she acted as if she were asleep because she thought she would get in trouble. At all material times, N.R. slept in the bottom bunk bed with A.F., and E.A. slept in the top bunk bed. The metal bunk bed creaked. However, N.R. testified that E.A. and A.F. were always asleep when appellant sexually abused her, and N.R. never told her sisters anything about this alleged abuse. Sergeant Littlejohn testified regarding N.R.'s statements to the police. Ms. Fox testified about N.R.'s alleged outcry statement and about N.R.'s visit to the police detectives' office. Dr. Sheela Lahoti, a pediatrician, testified concerning the examination of N.R. at the Child Assessment Center and the determination that N.R.'s hymen has a partial transection. Although this transection is consistent with digital penetration, Dr. Lahoti stated she could not say what caused the partial transection of N.R.'s hymen.

Appellant called at least thirteen witnesses. Appellant testified that he never put his finger in N.R.'s vagina, that Ms. Fox is a manipulative person, and that she prompted N.R. to make these allegations to guarantee that appellant would not have custody of A.F. and J.F. Nonetheless, the State's case boiled down to an allegation that appellant repeatedly put his finger in N.R.'s vagina at night with no witnesses. Although the State introduced some physical evidence, this evidence was not conclusive on the issue of sexual abuse. The State did not adduce strong circumstantial evidence that N.R. had been sexually abused. As admitted by the State in its closing argument, this case came down to whose story the jury believed: "[N.R.] and the Defendant. That's it. It just comes down to a question of who do you believe? Do you believe [N.R.], [*sic*] the Defendant's guilty. If you believe the story he got up and told you then he's not guilty."

The evidence surrounding the allegations of E.A. and A.F. supports the defense's theory under the doctrine of chances, and it supports a reasonable in-

---

**3.** In performing our harm analysis, we consider everything in the record. *Morales*, 32 S.W.3d at 867. Our record includes these two affidavits that were part of appellant's motion for new trial, and therefore, we consider them in our analysis. Texas Rule of Evidence 606(b) does not prevent us from considering these affidavits. Appellant does not challenge the validity of the verdict or the indictment; rather, appellant seeks a new trial based on a claim that the trial court's erroneous exclusion of evidence is reversible error. *See* Tex.R. Evid. 606(b); *Morales*, 32 S.W.3d at 867.

ference that Ms. Fox induced N.R. to falsely accuse appellant. The excluded evidence was highly probative of appellant's defensive theory, and its exclusion significantly impaired appellant's ability to present his defense. The State has not argued on appeal that the exclusion of this evidence would be harmless error. Given the relatively weak nature of the State's case and given the centrality of the excluded evidence to the appellant's defensive theory, we conclude that the trial court's erroneous exclusion of the sexual-abuse allegations of E.A. and A.F. had a substantial and injurious effect or influence in determining the jury's verdict and therefore was reversible error. *See* TEX.R.APP. P. 44.2(b); *Johnson,* 43 S.W.3d at 3–4; *Kesterson,* 997 S.W.2d at 294–96; *Lape v. State,* 893 S.W.2d 949, 962 (Tex.App.-Houston [14th Dist.] 1994, pet. ref'd). Accordingly, we sustain appellant's first point.

**Did the trial court abuse its discretion when it determined that Wright was not qualified to give the expert testimony that appellant sought to elicit from her?**

Because we have sustained appellant's first point, we need not address appellant's other three issues as they are all remand issues. *See* TEX.R.APP. P. 47.1. Nonetheless, we will address appellant's second and third points because they raise evidentiary issues that are likely to recur in any retrial of this case. *See Davis v. State,* 831 S.W.2d 426, 442 (Tex.App.-Austin 1992, pet. ref'd). We will not address appellant's fourth point.

In his second point, appellant complains the trial court improperly excluded the testimony of his expert witness, Bettina Wright. Appellant offered Wright as an expert to testify regarding three areas: (1) the proper protocols for interviewing a child who has been abused; (2) developmental stages of a child; and (3) behavioral patterns of an abused child.

We will not disturb a trial court's determination that a witness is not qualified as an expert unless the appellant shows an abuse of discretion. *Penry,* 903 S.W.2d at 762. A trial court enjoys wide latitude in determining whether expert testimony is admissible. *See Hernandez v. State,* 53 S.W.3d 742, 750 (Tex.App.-Houston [1st Dist.] 2001, no pet.). In this case, the trial court excluded Wright's testimony, finding that she was not qualified to testify as an expert witness on the subjects for which appellant offered her testimony.

Appellant argues the trial court abused its discretion and that Wright was qualified as an expert for the following reasons: (1) she has a master's degree in social work from the University of Texas and a psychology degree from the University of Saint Thomas; (2) she worked for Child Protective Services and dealt with abused children; (3) at the time of trial, she had been a social worker in the public sector for ten years and in private practice for five years; and (4) she had been the Director of Behavioral Health at the Spring Branch Medical Center. However, Wright testified that she worked on only 15 to 25 cases of child abuse while at Child Protective Services in 1990–1991, and that she had worked on only 20 to 30 child-abuse cases during her private practice for the last five years. Wright's private practice does not concentrate solely on children, and at the time of trial, she did not have any child-abuse victims as clients. Wright testified that she had never conducted independent scientific studies on sexually abused children or on the proper techniques used to interview abused children. Moreover, Wright had not published any articles on sexually abused children or the protocols for interviewing abused

children. *See, e.g., Perez v. State,* 25 S.W.3d 830, 837 (Tex.App.-Houston [1st Dist.] 2000, no pet.) (expert had never written an article regarding her area of testimony as a factor in finding expert unqualified).

An expert may be qualified to testify if the expert has special knowledge derived from the study of technical works, specialized education, practical experience, or a combination of the above. *See Clark v. State,* 881 S.W.2d 682, 698 (Tex.Crim. App.1994). The Texas Rules of Evidence permit a witness qualified as an expert by knowledge, skill, experience, training, or education to testify on scientific, technical, or other specialized subjects if the testimony would assist the trier of fact in understanding the evidence or determining a fact issue. *See* Tex.R. Evid. 702; *Clark,* 881 S.W.2d at 698. The burden of establishing the witness's qualifications as an expert is on the offering party, who must demonstrate that the witness possesses special knowledge as to the subject on which she proposes to give an opinion. *Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 718 (Tex.1998).

Appellant did not satisfy his burden of establishing that Wright was qualified to testify as an expert in the areas stated above. We find that, because Wright had so little experience in dealing specifically with abused children and little experience in the techniques typically used to interview abused children, the trial court did not abuse its discretion in finding her not qualified to testify as an expert witness. We overrule appellant's second point.

### Did the trial court unconstitutionally prevent appellant from cross-examining Ms. Fox about her alleged extramarital affair with Bob Bridges?

In his third point, appellant asserts the trial court unconstitutionally prevented him from cross-examining Ms. Fox about her alleged extramarital affair with her boss, Bob Bridges. At trial, appellant sought to cross-examine Ms. Fox about this affair to show Ms. Fox's bias and motive for allegedly planting the notion of sexual abuse in the minds of E.A., N.R., and A.F. Appellant contended that Ms. Fox wanted to divorce him so that she could be with Bridges and keep custody of all of her children, including her children with appellant (A.F. and J.F.).

The trial court ruled that any evidence of Ms. Fox's alleged extramarital affair with Bridges was improper under Texas Rule of Evidence 608(b) and that appellant could not cross-examine her on this topic. Nevertheless, the trial court allowed appellant to testify concerning one instance in which appellant saw Ms. Fox kissing Bridges on the Foxes' front lawn at night, approximately one month before N.R. and her sisters alleged sexual abuse against appellant. The trial court, however, would not allow any more evidence about the alleged extramarital affair. To rebut appellant's testimony, the State called Bridges to testify. He denied any "romantic involvement" with Ms. Fox.

An accused should be allowed great latitude to show any fact which, when tested by human experience, would tend to establish bias or motive upon the part of any witness testifying against him. *Koehler v. State,* 679 S.W.2d 6, 9 (Tex. Crim.App.1984). The motives which operate upon the mind of a testifying witness are never regarded as immaterial or collateral matters. *Id.* The significant issue is whether the motive is one that tends to affect the witness's credibility. *Jackson v. State,* 482 S.W.2d 864, 868 (Tex.Crim.App. 1972). When the purpose of cross-examination is to bring out facts that will convey to the jury attitudes, motives, and interests that may affect a witnesses's credibili-

ty, the trial court should allow wide latitude in cross-examination. *Id.* at 867–68. If the witness denies anything that would show a motive or animus against or for a party, the motive or bias may be shown by other witnesses and by independent facts. *Koehler,* 679 S.W.2d at 10; *Thomas v. State,* 897 S.W.2d 539, 542 (Tex.App.-Fort Worth 1995, no pet.).

 Further, the Sixth Amendment of the United States Constitution protects appellant's right to cross-examine for bias and motive. *See Davis v. Alaska,* 415 U.S. 308, 315–17, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Exposing a witness's motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Id.* Evidence to show bias or interest of a witness covers a wide range, and the field of external circumstances from which bias or interest may be inferred is infinite. *Carroll v. State,* 916 S.W.2d 494, 497–98 (Tex.Crim. App.1996). The rule encompasses all facts and circumstances that, when tested by human experience, tend to show that witnesses may shade their testimony for the purpose of favoring one side of the case. *Id.* at 498. Appellant's attempted cross-examination regarding Ms. Fox's relationship with Bridges was probative of Ms. Fox's alleged bias and motive in testifying against appellant. It is also probative of the defensive theory regarding her motive in allegedly planting the idea of sexual abuse in N.R.'s mind. Moreover, because appellant sought to cross-examine Ms. Fox concerning bias and motive in this case, rather than attacking Ms. Fox's general character for truthfulness, Rule 608 does not preclude this cross-examination. *See* Tex.R. Evid. 608, 612(b); *Dixon v. State,* 2 S.W.3d 263, 271–73 (Tex.Crim.App.1999); *Carroll,* 916 S.W.2d at 500; *Jackson,* 482 S.W.2d at 867; *Thomas,* 897 S.W.2d at 542.

 A trial court may limit proper cross-examination only when a subject is exhausted, when it is designed to annoy, harass, or humiliate, or when it might endanger the witness's personal safety. *Carroll,* 916 S.W.2d at 498. In this case, however, the subject was Ms. Fox's motive to plant the notion of sexual abuse in her young daughters' minds because she wanted a divorce and custody of her children so she could be with Bridges. This subject was never exhausted. Cross-examination on this topic was not designed to annoy, harass, or humiliate; rather, it was designed to show what appellant asserts were Ms. Fox's motives and biases in this case. There is no indication in the record that allowing this cross-examination might endanger Ms. Fox's personal safety. Therefore, these grounds for limiting appellant's cross-examination do not apply. *See Carroll,* 916 S.W.2d at 498.

The State also asserts that the trial court did not violate appellant's constitutional right to confront and cross-examine Ms. Fox because the bias or motive asserted by appellant was clear to the jury through testimony about the Foxes' troubled marriage and because appellant was otherwise afforded an opportunity for a thorough and effective cross-examination. *See Carmona v. State,* 698 S.W.2d 100, 104 (Tex.Crim.App.1985). The State admits that appellant was not allowed to cross-examine Ms. Fox based on her alleged amorous relationship with Bridges, a relationship that Bridges expressly denied. We conclude that the alleged bias and motive in question was not made clear to the jury and that appellant was not allowed to thoroughly and effectively cross-examine Ms. Fox on this subject. *See Carmona,* 698 S.W.2d at 104.

The State also relies on the *Norrid* case, which held that the trial court did not abuse its discretion by precluding cross-

examination of a witness concerning her psychological counseling, medications, excessive use of alcohol, and her extramarital affair. *See Norrid v. State,* 925 S.W.2d 342, 346–47 (Tex.App.-Fort Worth 1996, no pet.). We conclude that *Norrid* is not on point. In *Norrid,* the court found that it was not clear how the extramarital affair would show bias on the witness's part and that the requested cross-examination would harass the witness. *Id.* at 347. In this case, it is clear how Ms. Fox's extramarital affair with Bridges would show bias on Ms. Fox's part, and cross-examining Ms. Fox in this regard would not constitute harassment of the witness. Therefore, *Norrid* does not apply to this case.

If appellant had shown that Ms. Fox was having an extramarital affair with Bridges, that fact would have made it more likely that she wanted a divorce from appellant and custody of the children long before the three girls made any allegations of sexual abuse. If Ms. Fox wanted a divorce and custody of the two children born of her marriage to appellant, then she had a strong motive to suggest to E.A., N.R., and A.F. that appellant had sexually molested them. If appellant were in jail or even accused of sexual abuse of a child, Ms. Fox would stand a far better chance of obtaining custody of all of the children. Because appellant's requested cross-examination of Ms. Fox was proper under the rules of evidence and required by the Confrontation Clause of the United States Constitution, the trial court abused its discretion in preventing appellant from cross-examining Ms. Fox concerning her alleged extramarital affair with Bridges. *See Olden v. Kentucky,* 488 U.S. 227, 228–32, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988) (trial court's limitation of defendant's cross-examination of complainant about her current boyfriend to show her motive to lie to protect her relationship with him violated the Confrontation Clause); *Thomas,* 897

S.W.2d at 541–43 (Confrontation Clause was violated when trial court prevented defendant from cross-examining sexual assault victim regarding her boyfriend's jealousy and violence since defense theory was that victim fabricated sexual-assault charges because she feared her boyfriend would beat her if he knew that she had consensual sex with another man); *Chew v. State,* 804 S.W.2d 633, 636 (Tex.App.-San Antonio 1991, pet. ref'd) (en banc) (plurality opinion) (holding that limitation of cross-examination of sexual-assault complainant concerning subsequent sexual encounters violated defendant's Confrontation Clause rights).

We must determine whether the trial court's unconstitutional denial of appellant's right to cross-examine Ms. Fox was harmful. Errors in limiting cross-examination are subject to a harm analysis for constitutional error, and we must reverse the conviction unless we find, beyond a reasonable doubt, that the error did not contribute to the conviction or punishment. U.S. CONST. amend. VI; TEX.R.APP. P. 44.2(a); *Shelby v. State,* 819 S.W.2d 544, 547 (Tex.Crim.App.1991). We analyze harm in limiting cross-examination under the *Van Arsdall* standard. *See Delaware v. Van Arsdall,* 475 U.S. 673, 678, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Shelby,* 819 S.W.2d at 547.

First, we presume that the damaging potential of the cross-examination was fully realized. *Shelby,* 819 S.W.2d at 547. In this case, we presume that, if Ms. Fox had been cross-examined on the existence of an amorous relationship with Bridges, the jury would have believed that Ms. Fox and Bridges were romantically involved.

Second, with that presumption in mind, we review the error in connection with the following factors: (1) the importance of the witness's testimony in the

prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case. *Id.* Third, based on this review, we must determine if the error was harmless beyond a reasonable doubt. *Id.*

 In this case, Ms. Fox's testimony was an important part of the State's case because she was the "outcry" witness. Further, she was the only person with an alleged motive to manipulate N.R. into believing sexual abuse had occurred when it had not. As N.R.'s mother, Ms. Fox was uniquely positioned to plant false ideas of sexual abuse in N.R.'s mind. This testimony was not cumulative because evidence from Ms. Fox regarding her alleged amorous relationship with Bridges presumably would have corroborated appellant's testimony and contradicted Bridges's rebuttal testimony. The trial court allowed no evidence of any romantic relationship, other than testimony from appellant that he saw Ms. Fox kiss Bridges on one occasion. The trial court seemed to indicate that it was sufficient for the jury to hear testimony that the Foxes were going through divorce proceedings and were involved in a custody dispute. However, Ms. Fox filed for divorce shortly after N.R.'s outcry, and therefore, as argued by the State in its closing, the jury could have inferred that Ms. Fox filed for divorce because of the alleged sexual abuse. Ms. Fox's on-going amorous relationship with Bridges would have provided a motive for why Ms. Fox wanted to divorce appellant and why it might otherwise have been difficult for her to ensure a successful custody battle with appellant. Evidence of an amorous relationship between Ms. Fox and Bridges before Ms. Fox's three daughters made sexu-

al-abuse allegations against appellant would be important evidence of motive and a crucial part of appellant's defensive theory. Finally, the State's case was relatively weak.

After evaluating the record based on the *Van Arsdall* factors, we conclude that the trial court's constitutional error in limiting cross-examination regarding Ms. Fox's relationship with Bridges was harmful. *See Van Arsdall,* 475 U.S. at 678, 106 S.Ct. 1431; *Shelby,* 819 S.W.2d at 550–51; *McDaniel v. State,* 3 S.W.3d 176, 180–82 (Tex.App.-Fort Worth 1999, pet. ref'd) (harmful error to limit cross-examination of State's only witness on his motive to fabricate testimony against former wife; although jury heard that their divorce was bitter, defense was entitled to cross-examine ex-husband on "substantial child support arrearage judgment" against him); *Kesterson,* 997 S.W.2d at 296 (harmful error to limit cross-examination of expert in child sexual-abuse case regarding fact that child had previously accused another relative of abusing her); *Thomas,* 897 S.W.2d at 542–43 (applying *Van Arsdall* factors and finding that error in preventing cross-examination of sexual-assault victim about her boyfriend's jealousy and violence was not harmless beyond a reasonable doubt). Accordingly, we sustain appellant's third point.

## V. CONCLUSION

Evidence regarding the sexual-abuse allegations made by E.A. and A.F. was admissible under Texas Rules of Evidence 401, 403, and 404, and the trial court abused its discretion in excluding this evidence. The trial court violated appellant's constitutional rights under the Confrontation Clause by preventing appellant from cross-examining Ms. Fox regarding her alleged amorous relationship with Bridges. For these reasons, we sustain appellant's

first and third points, reverse appellant's conviction, and remand for a new trial.