Opinion issued April 21, 2005















In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00501-CR
____________

JAMES LEE MULVIHILL, Appellant

V.

THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 963455
 

 
 
O P I N I O N
            A jury found appellant, James Lee Mulvihill, guilty of the offense of
aggravated sexual assault of a child


 and assessed his punishment at confinement for
20 years. In his sole point of error, appellant contends that the trial court erred in
admitting unqualified expert testimony. We affirm.
Factual and Procedural Background
          Paula Johnson, the complainant’s mother, testified that she and appellant
married in 1981 and that they subsequently had two daughters, the complainant and
her older sister. In August 2000, due to marital difficulties, Johnson and appellant
separated, and Johnson, the complainant, and the older sister moved into an
apartment. Johnson explained that, before the middle of the complainant’s sixth-grade year, in early 2001, the complainant had been a “good,” “sweet,” and “[h]appy,
lovable child.” However, in early 2001, the complainant had adopted a “tough-girl
type exterior.” Johnson had also noticed other changes in the complainant. Johnson
was notified twice by the complainant’s school that the complainant had told other
students that she was going to commit suicide. The complainant also began telling
lies, including telling neighbors that appellant had died of a heart attack. 
Furthermore, the complainant also consumed Xanax bars that other students had
given to her. 
          Johnson further testified that, in June 2003, after Johnson picked up the
complainant from the house of Cathy Lookofsky, appellant’s sister, the complainant
first told her that appellant had been touching the complainant inappropriately. About
two weeks later, Johnson reported the information to the Baytown Police Department. 
She then placed the complainant in counseling with Dene Edmiston, a counselor at
the New Horizons Center in Baytown, Texas, where the complainant was still
receiving counseling at the time of trial. 
          The complainant testified that, on February 14, 2001, when she was 12 years
old, she spent the night at appellant’s house. After she fell asleep, she was awakened
when she felt appellant digitally penetrate her vagina. Appellant told her not to “tell
anybody because [he] could go to jail.” The next morning, while appellant was
driving the complainant back to Johnson’s apartment, appellant told her that if she
“ever walked out of [his] life, that his life would be over right there.” Two weeks
later, the complainant moved in with appellant, who touched her in a similar manner
between two and ten times until the complainant moved back to Johnson’s apartment
on March 31, 2001. However, in July 2001, after Johnson’s and appellant’s divorce
was finalized, pursuant to a standard possession order, the complainant began visiting
appellant every other weekend and on holidays. She explained that her visits with
appellant were “good for a while,” but then appellant again began entering her
bedroom at night and digitally penetrating her vagina. He continued to touch her in
such a manner during every weekend visit until appellant left the country in April or
May of 2002. The complainant explained that, after each time appellant touched the
complainant, while driving the complainant back to Johnson’s house, appellant would
cry and tell the complainant that he loved her, that he wanted her to live with him, and
that he did not want her to leave him. She also explained that appellant’s behavior
made her feel guilty and “bad” and that she did not immediately tell anyone what had
happened because she “didn’t want [appellant] to go to jail.” In June 2003, shortly
before appellant returned to the United States, the complainant first told Lookofsky
and then told Johnson that appellant had been touching her inappropriately.As part of its case-in-chief, the State called Dene Edmiston, a counselor who
had been treating the complainant, to testify. Edmiston testified that, in total, she had
worked with sexually abused persons for three-and-one-half to four years. She
explained that, at the time of trial and for the past two-and-one-half years, she was a
counselor for New Horizons Center in Baytown, Texas, where she counseled those 
who had been sexually assaulted, sexually abused, and victimized by domestic
violence. She explained that, on average, she had a caseload of 35 to 45 clients per
month at New Horizons and that her clients’ ages ranged from ages four to fifty. 
Regarding her educational experience, she testified that she had a bachelor’s degree
in humanities with an emphasis on women’s studies and that she had a master’s
degree from the University of Houston at Clear Lake in behavioral sciences and
human services with an emphasis on working with victims of domestic violence and
sexual assault. Edmiston explained that her master’s degree program consisted
predominantly of psychology courses. She also explained that, as a requirement for
her master’s degree, she completed an internship at the Houston Area Women’s
Center (HAWC). Furthermore, she testified that she had also volunteered at HAWC
prior to fulfilling her internship requirement. 
          Thereafter, appellant requested a voir dire examination,


 outside the jury’s
presence, to determine whether Edmiston was qualified to testify as an expert
concerning the symptoms exhibited by sexually abused children. During voir dire,
Edmiston admitted that she was neither a psychiatrist nor a psychologist. She
reiterated her educational background and work history and stated that she regularly
attended continuing education classes, including classes with Depelchin Children’s
Center and the Texas Association on Sexual Assault. She also explained that her
master’s degree program at HAWC had required her to complete an internship
consisting of at least 500 hours. At HAWC, Edmiston had worked with young adults
and adults who had been victims of domestic violence or who had been sexually
assaulted. Prior to and separate from her internship for her master’s degree, she had
volunteered at HAWC while she was obtaining her bachelor’s degree. Edmiston also
explained that she had counseled the complainant on almost a weekly basis for the
eight months prior to appellant’s trial. 
          At this point, appellant objected to Edmiston’s qualifications as to proffering
an opinion regarding the symptoms exhibited by sexually abused children and
whether the symptoms exhibited by the complainant were consistent with such
symptoms. Appellant argued that Edmiston did not have “the proper education,” the
“proper hands-on experience,” and “the proper knowledge” to determine if
“somebody is a victim of sexual abuse,” and that, in order for Edmiston to be
qualified to testify as an expert, “she has got to show you something through
literature, through medical experience, working in conjunction with doctors,
psychologists, or psychiatrists.” 
          The trial court then asked Edmiston how many sexually abused children or
young adults Edmiston had counseled, to which Edmiston replied 25 or 30. After
confirming that the State would not solicit an opinion from Edmiston as to the
complainant’s credibility or whether Edmiston herself believed that the complainant
was sexually assaulted, the trial court ruled that Edmiston could testify as an expert
concerning the symptoms exhibited by sexually abused children and whether the
complainant’s behavior was consistent such symptoms. Appellant requested and
received a running objection regarding Edmiston’s testimony as to the symptoms
exhibited by sexually abused children. 
          Edmiston then described the symptoms that sexually abused children generally
exhibit. She explained that every sexually abused child or teenager responds
differently to his or her abuse, depending upon his or her mental development. She
then explained to the jury the various ways that both children and teenagers feel and
behave after being sexually abused, especially when the abuse is committed by a
parent. She explained that abused children can lie and engage in inappropriate
behavior. Edmiston also told the jury about the process of “grooming,” whereby a
perpetrator treats a child in a special or different manner from the way he or she treats
others in order to gain access to the child. She noted that children often do not report
sexual abuse immediately because they are confused and, depending upon their
mental development, do not have the skills to communicate what has happened to
them. She also explained that the sexual abuser may persuade the child not to tell
anyone of the abuse because the abuser may be sent to jail. She concluded by
testifying, that, in her opinion, the complainant had exhibited behavioral symptoms
consistent with those exhibited by sexually abused children. 
 
Standard of Review 
          Under Texas Rule of Evidence 702,


 trial courts have a “gate keeping” duty to
ensure that expert testimony is not only relevant, but reliable. Hernandez v. State, 53
S.W.3d 742, 747-48 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d). As an
appellate court, we will not disturb a trial court’s determination that a witness is or
is not qualified as an expert under Rule 702 unless a clear abuse of discretion is
shown. Id. at 750. A reviewing court cannot conclude that a trial court abused its
discretion simply because, in the same circumstances, it would have ruled differently
or if the trial court made an error in judgment. Id. (citing E.I. du Pont de Nemours &
Co., Inc. v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995)). The test is not whether the
facts present an appropriate case for the trial court’s action in the opinion of the
reviewing court. Id. We will gauge an abuse of discretion by whether the trial court
acted without reference to any guiding rules or principles. Id. This Court has
emphasized that trial courts enjoy wide latitude in determining whether expert
testimony is admissible and that the pertinent suggested inquiries utilized in making
this determination “are to be used flexibly and are not exclusive.” Id. at 752.
Expert Testimony
          In his sole point of error, appellant argues that the trial court erred in admitting
Edmiston’s “testimony about the symptoms of sexual abuse” because (1) she “lacked
significant experience in dealing with child sex abuse victims, having treated only
‘25’ or ‘30’ children”; and (2) “the record does not reflect that [she] had ever given
a single lecture, or written any article, on the subject of child sexual abuse, much less
ever having testified in any court as an expert.” Furthermore, appellant emphasizes
that Edmiston did not have any practical experience working with sexually abused
children prior to working at New Horizons as a counselor. 
          In support of his argument that Edmiston was “not qualified to testify,”
appellant relies on Fox v. State, 115 S.W.3d 550 (Tex. App.—Houston [14th Dist.]
2002, pet. ref’d). In Fox, the Fourteenth Court of Appeals concluded that the
defendant did not satisfy his burden of establishing that his expert was qualified to
testify regarding the (1) proper protocols for interviewing a child who has been
abused; (2) developmental stages of a child; and (3) behavioral patterns of an abused
child. Id. at 565-66. The court noted the expert’s qualifications as follows: (1) she
had a master’s degree in social work from the University of Texas and a psychology
degree from the University of Saint Thomas; (2) she worked for Child Protective
Services and dealt with abused children; (3) at the time of trial, she had been a social
worker in the public sector for ten years and in private practice for five years; and
(4) she had been the Director of Behavioral Health at the Spring Branch Medical
Center. Id. at 565. The court concluded that “because [the expert] had so little
experience in dealing specifically with abused children and little experience in the
techniques typically used to interview abused children, the trial court did not abuse
its discretion in finding her not qualified to testify as an expert witness.” Id. at 566. 
          Significantly, the Fox court reached this conclusion without reference to the
Texas Court of Criminal Appeals’ holding in Nenno v. State, which provides that
courts, in determining whether nonscientific expert testimony is reliable under Rule
702 and, therefore, admissible, must determine (1) whether the expert’s field of
expertise is a legitimate one; (2) whether the subject matter of the expert’s testimony
is within the scope of the expert’s field of expertise; and (3) whether the expert’s
testimony properly relied upon or utilized the principles involved in her field. 970
S.W.2d 549, 561 (Tex. Crim. App. 1998), overruled on other grounds by State v.
Terrazas, 4 S.W.3d 720, 727 (Tex. Crim. App. 1999).
          This Court has noted that expert testimony regarding the effect of sexual abuse
on children is “nonscientific expert testimony” and, in determining whether such
nonscientific testimony is reliable and, therefore, admissible, we must consider
(1) whether the expert’s field of expertise is a legitimate one; (2) whether the
symptoms exhibited by sexually abused children are within the scope of the expert’s
field of expertise; and (3) whether the expert’s testimony properly relied upon or
utilized the principles involved in her field. Hernandez, 53 S.W.3d at 749. Again,
we emphasize that expert-qualification inquiries are flexible and are not exclusive. 
Id. at 752. Moreover, we note that, where appropriate, “experience alone may
provide a sufficient basis for an expert’s testimony.” Id. at 751. Accordingly, we
decline to follow Fox and, instead, follow the precedent of Nenno and Hernandez in
making the appropriate inquiries. 
          With respect to the first question, both the Court of Criminal Appeals and this
Court have recognized that Edmiston’s field of expertise is legitimate. Cohn v. State,
849 S.W.2d 817, 818-19 (Tex. Crim. App. 1993) (recognizing that research
concerning the behavioral characteristics of children is a legitimate field of expertise);
Hernandez, 53 S.W.3d at 751 (recognizing that experience regarding characteristics
and dynamics of sexually abused children is a legitimate field of expertise); see also
Clark v. State, 881 S.W.2d 682, 698 (Tex. Crim. App. 1994) (recognizing that
“special knowledge which qualifies a witness to give an expert opinion may be
derived from the study of technical works, specialized education, practical
experience, or a combination thereof”).
          In regard to whether the subject matter of Edmiston’s testimony was within the
scope of her field, Edmiston testified as to the symptoms that sexually abused
children generally exhibit and that the complainant exhibited such symptoms. 
Edmiston testified that her opinions were based on her education, her training, and
her experience as a counselor. She had earned a master’s degree in behavioral
sciences and human services, with an emphasis on working with those who had been
sexually abused. As part of her master’s degree, she had completed a 500-hour
internship at HAWC, where she worked with young adults who had been sexually
abused. Edmiston had taken numerous continuing education courses that concerned
working with sexually abused persons. At the New Horizons Center, where she
counseled those who had been sexually abused, she handled a caseload of 35 to 45
clients per month. Moreover, in her two-and-one-half years as a counselor at New
Horizons, Edmiston had counseled between 25 and 30 children who had been
sexually abused. For the eight months prior to the trial, Edmiston had counseled the
complainant on a weekly basis. Thus, the trial court was presented with ample
evidence to support an implied finding that the subject matter of Edmiston’s
testimony was within the scope of her field. 
          Finally, we conclude that Edmiston’s testimony properly relied upon or utilized
the principles in her field. Her opinions regarding the symptoms exhibited by
sexually abused children were based on her advanced educational experience, her
experience as both a volunteer and an intern at HAWC, her knowledge gained
through her continuing education classes, and, primarily, her experience as a
counselor at New Horizons, where she had counseled children who had been sexually
abused. Furthermore, because Edmiston had counseled the complainant for the eight
months prior to trial, Edmiston was in a position to observe the complainant’s
behavior. Although appellant asserts that Edmiston, through her testimony, had to
show the trial court “something through literature, through medical experience,
working in conjunction with doctors, psychologists, or psychiatrists” in order to be
qualified to testify regarding the symptoms exhibited by sexually abused children, the
evidence of Edmiston’s education, training, and experience discussed above provide
a sufficient basis for the trial court to have found that her testimony was reliable. The
absence of studies quantifying or providing a statistical analysis does not affect the
reliability and, therefore, admissibility, of her testimony but only affects the weight
of the evidence. Hernandez, 53 S.W.3d at 749-50. 
          Our review in regard to a trial court’s ruling on the reliability of expert
testimony focuses on whether the trial court acted without reference to the pertinent
guiding rules or principles. Id. at 752. Here, we cannot conclude that the trial court
failed to act with reference to guiding rules and principles in determining that
Edmiston was qualified to render an opinion on whether the complainant had
exhibited symptoms consistent with those generally exhibited by sexually abused
children, and, therefore, we will not disturb its ruling. See Morales, 32 S.W.3d at
865-66. Accordingly, we hold that the trial court did not abuse its discretion in
admitting Edmiston’s testimony regarding the behavioral symptoms generally
exhibited by sexually abused children and that the complainant had exhibited such
symptoms. 
          We overrule appellant’s sole point of error. 
Conclusion
          We affirm the judgment of the trial court.
 
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Nuchia, Jennings, and Alcala.

Publish. Tex. R. App. P. 47.2(b).