**James Lee MULVIHILL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–04–00501–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

April 21, 2005.

Discretionary Review Refused Dec. 14, 2005.

Steven R. Rosen, Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney–Harris County, Amanda J. Peters, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, JENNINGS, and ALCALA.

## OPINION

TERRY JENNINGS, Justice.

A jury found appellant, James Lee Mulvihill, guilty of the offense of aggravated sexual assault of a child [1] and assessed his punishment at confinement for 20 years. In his sole point of error, appellant contends that the trial court erred in admitting unqualified expert testimony. We affirm.

### Factual and Procedural Background

Paula Johnson, the complainant's mother, testified that she and appellant married in 1981 and that they subsequently had two daughters, the complainant and her older sister. In August 2000, due to marital difficulties, Johnson and appellant separated, and Johnson, the complainant, and the older sister moved into an apartment. Johnson explained that, before the middle of the complainant's sixth-grade year, in early 2001, the complainant had been a "good," "sweet," and "[h]appy, lovable child." However, in early 2001, the complainant had adopted a "tough-girl type exterior." Johnson had also noticed other changes in the complainant. Johnson was notified twice by the complainant's school that the complainant had told other students that she was going to commit suicide. The complainant also began telling lies, including telling neighbors that appellant had died of a heart attack. Furthermore, the complainant also consumed Xanax bars that other students had given to her.

Johnson further testified that, in June 2003, after Johnson picked up the complainant from the house of Cathy Lookofsky, appellant's sister, the complainant first told her that appellant had been touching the complainant inappropriately. About two weeks later, Johnson reported the information to the Baytown Police Department. She then placed the complainant in counseling with Dene Edmiston, a counselor at the New Horizons Center in Baytown, Texas, where the complainant was still receiving counseling at the time of trial.

The complainant testified that, on February 14, 2001, when she was 12 years old, she spent the night at appellant's house. After she fell asleep, she was awakened when she felt appellant digitally penetrate her vagina. Appellant told her not to "tell anybody because [he] could go to jail." The next morning, while appellant was driving the complainant back to Johnson's apartment, appellant told her that if she "ever walked out of [his] life, that his life would be over right there." Two weeks later, the complainant moved in with appellant, who touched her in a similar manner between two and ten times until the complainant moved back to Johnson's apartment on March 31, 2001. However, in July 2001, after Johnson's and appellant's divorce was finalized, pursuant to a standard possession order, the complainant began visiting appellant every other weekend and on holidays. She explained that her visits with appellant were "good for a while," but then appellant again began entering her bedroom at night and digitally penetrating her vagina. He continued to touch her in such a manner during every weekend visit until appellant left the country in April or May of 2002. The complainant explained that, after each time appellant touched the complainant, while driving the complainant back to Johnson's house, appellant would cry and tell the complainant that he loved her, that he wanted her to live with him, and that he did not want her to leave him. She also explained that appellant's behavior made

1. TEX. PEN.CODE ANN. § 22.011(a)(2)(A) (Vernon Supp.2004–2005).

her feel guilty and "bad" and that she did not immediately tell anyone what had happened because she "didn't want [appellant] to go to jail." In June 2003, shortly before appellant returned to the United States, the complainant first told Lookofsky and then told Johnson that appellant had been touching her inappropriately.

As part of its case-in-chief, the State called Dene Edmiston, a counselor who had been treating the complainant, to testify. Edmiston testified that, in total, she had worked with sexually abused persons for three-and-one-half to four years. She explained that, at the time of trial and for the past two-and-one-half years, she was a counselor for New Horizons Center in Baytown, Texas, where she counseled those who had been sexually assaulted, sexually abused, and victimized by domestic violence. She explained that, on average, she had a caseload of 35 to 45 clients per month at New Horizons and that her clients' ages ranged from ages four to fifty. Regarding her educational experience, she testified that she had a bachelor's degree in humanities with an emphasis on women's studies and that she had a master's degree from the University of Houston at Clear Lake in behavioral sciences and human services with an emphasis on working with victims of domestic violence and sexual assault. Edmiston explained that her master's degree program consisted predominantly of psychology courses. She also explained that, as a requirement for her master's degree, she completed an internship at the Houston Area Women's Center (HAWC). Furthermore, she testified that she had also volunteered at HAWC prior to fulfilling her internship requirement.

Thereafter, appellant requested a voir dire examination,[2] outside the jury's presence, to determine whether Edmiston was qualified to testify as an expert concerning the symptoms exhibited by sexually abused children. During voir dire, Edmiston admitted that she was neither a psychiatrist nor a psychologist. She reiterated her educational background and work history and stated that she regularly attended continuing education classes, including classes with Depelchin Children's Center and the Texas Association on Sexual Assault. She also explained that her master's degree program at HAWC had required her to complete an internship consisting of at least 500 hours. At HAWC, Edmiston had worked with young adults and adults who had been victims of domestic violence or who had been sexually assaulted. Prior to and separate from her internship for her master's degree, she had volunteered at HAWC while she was obtaining her bachelor's degree. Edmiston also explained that she had counseled the complainant on almost a weekly basis for the eight months prior to appellant's trial.

At this point, appellant objected to Edmiston's qualifications as to proffering an opinion regarding the symptoms exhibited by sexually abused children and whether the symptoms exhibited by the complainant were consistent with such symptoms. Appellant argued that Edmiston did not have "the proper education," the "proper hands-on experience," and "the proper knowledge" to determine if "somebody is a victim of sexual abuse," and that, in order for Edmiston to be qualified to testify as an expert, "she has got to show you something through literature, through medical experience, working in conjunction with doctors, psychologists, or psychiatrists."

The trial court then asked Edmiston how many sexually abused children or young adults Edmiston had counseled, to

which Edmiston replied 25 or 30. After confirming that the State would not solicit an opinion from Edmiston as to the complainant's credibility or whether Edmiston herself believed that the complainant was sexually assaulted, the trial court ruled that Edmiston could testify as an expert concerning the symptoms exhibited by sexually abused children and whether the complainant's behavior was consistent with such symptoms. Appellant requested and received a running objection regarding Edmiston's testimony as to the symptoms exhibited by sexually abused children.

Edmiston then described the symptoms that sexually abused children generally exhibit. She explained that every sexually abused child or teenager responds differently to his or her abuse, depending upon his or her mental development. She then explained to the jury the various ways that both children and teenagers feel and behave after being sexually abused, especially when the abuse is committed by a parent. She explained that abused children can lie and engage in inappropriate behavior. Edmiston also told the jury about the process of "grooming," whereby a perpetrator treats a child in a special or different manner from the way he or she treats others in order to gain access to the child. She noted that children often do not report sexual abuse immediately because they are confused and, depending upon their mental development, do not have the skills to communicate what has happened to them. She also explained that the sexual abuser may persuade the child not to tell anyone of the abuse because the abuser may be sent to jail. She concluded by testifying, that, in her opinion, the complainant had exhibited behavioral symptoms consistent with those exhibited by sexually abused children.

### Standard of Review

Under Texas Rule of Evidence 702,[3] trial courts have a "gate keeping" duty to ensure that expert testimony is not only relevant, but reliable. *Hernandez v. State*, 53 S.W.3d 742, 747–48 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd). As an appellate court, we will not disturb a trial court's determination that a witness is or is not qualified as an expert under Rule 702 unless a clear abuse of discretion is shown. *Id.* at 750. A reviewing court cannot conclude that a trial court abused its discretion simply because, in the same circumstances, it would have ruled differently or if the trial court made an error in judgment. *Id.* (*citing E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 558 (Tex.1995)). The test is not whether the facts present an appropriate case for the trial court's action in the opinion of the reviewing court. *Id.* We will gauge an abuse of discretion by whether the trial court acted without reference to any guiding rules or principles. *Id.* This Court has emphasized that trial courts enjoy wide latitude in determining whether expert testimony is admissible and that the pertinent suggested inquiries utilized in making this determination "are to be used flexibly and are not exclusive." *Id.* at 752.

### Expert Testimony

In his sole point of error, appellant argues that the trial court erred in admitting Edmiston's "testimony about the symptoms of sexual abuse" because (1) she "lacked significant experience in dealing with child sex abuse victims, having treated only '25' or '30' children"; and (2) "the record does not reflect that [she] had ever given a single lecture, or written any article, on the subject of child sexual abuse, much less ever having testified in any

---

**3.** Tex.R. Evid. 702.

court as an expert." Furthermore, appellant emphasizes that Edmiston did not have any practical experience working with sexually abused children *prior* to working at New Horizons as a counselor.

In support of his argument that Edmiston was "not qualified to testify," appellant relies on *Fox v. State,* 115 S.W.3d 550 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd). In *Fox,* the Fourteenth Court of Appeals concluded that the defendant did not satisfy his burden of establishing that his expert was qualified to testify regarding the (1) proper protocols for interviewing a child who has been abused; (2) developmental stages of a child; and (3) behavioral patterns of an abused child. *Id.* at 565–66. The court noted the expert's qualifications as follows: (1) she had a master's degree in social work from the University of Texas and a psychology degree from the University of Saint Thomas; (2) she worked for Child Protective Services and dealt with abused children; (3) at the time of trial, she had been a social worker in the public sector for ten years and in private practice for five years; and (4) she had been the Director of Behavioral Health at the Spring Branch Medical Center. *Id.* at 565. The court concluded that "because [the expert] had so little experience in dealing specifically with abused children and little experience in the techniques typically used to interview abused children, the trial court did not abuse its discretion in finding her not qualified to testify as an expert witness." *Id.* at 566.

Significantly, the *Fox* court reached this conclusion without reference to the Texas Court of Criminal Appeals' holding in *Nenno v. State,* which provides that courts, in determining whether nonscientific expert testimony is reliable under Rule 702 and, therefore, admissible, must determine (1) whether the expert's field of expertise is a

legitimate one; (2) whether the subject matter of the expert's testimony is within the scope of the expert's field of expertise; and (3) whether the expert's testimony properly relied upon or utilized the principles involved in her field. 970 S.W.2d 549, 561 (Tex.Crim.App.1998), *overruled on other grounds by State v. Terrazas,* 4 S.W.3d 720, 727 (Tex.Crim.App.1999).

This Court has noted that expert testimony regarding the effect of sexual abuse on children is "nonscientific expert testimony" and, in determining whether such nonscientific testimony is reliable and, therefore, admissible, we must consider (1) whether the expert's field of expertise is a legitimate one; (2) whether the symptoms exhibited by sexually abused children are within the scope of the expert's field of expertise; and (3) whether the expert's testimony properly relied upon or utilized the principles involved in her field. *Hernandez,* 53 S.W.3d at 749. Again, we emphasize that expert-qualification inquiries are flexible and are not exclusive. *Id.* at 752. Moreover, we note that, where appropriate, "experience alone may provide a sufficient basis for an expert's testimony." *Id.* at 751. Accordingly, we decline to follow *Fox* and, instead, follow the precedent of *Nenno* and *Hernandez* in making the appropriate inquiries.

With respect to the first question, both the Court of Criminal Appeals and this Court have recognized that Edmiston's field of expertise is legitimate. *Cohn v. State,* 849 S.W.2d 817, 818–19 (Tex.Crim. App.1993) (recognizing that research concerning the behavioral characteristics of children is a legitimate field of expertise); *Hernandez,* 53 S.W.3d at 751 (recognizing that experience regarding characteristics and dynamics of sexually abused children is a legitimate field of expertise); *see also Clark v. State,* 881 S.W.2d 682, 698 (Tex. Crim.App.1994) (recognizing that "special

knowledge which qualifies a witness to give an expert opinion may be derived from the study of technical works, specialized education, practical experience, or a combination thereof").

In regard to whether the subject matter of Edmiston's testimony was within the scope of her field, Edmiston testified as to the symptoms that sexually abused children generally exhibit and that the complainant exhibited such symptoms. Edmiston testified that her opinions were based on her education, her training, and her experience as a counselor. She had earned a master's degree in behavioral sciences and human services, with an emphasis on working with those who had been sexually abused. As part of her master's degree, she had completed a 500–hour internship at HAWC, where she worked with young adults who had been sexually abused. Edmiston had taken numerous continuing education courses that concerned working with sexually abused persons. At the New Horizons Center, where she counseled those who had been sexually abused, she handled a caseload of 35 to 45 clients per month. Moreover, in her two-and-one-half years as a counselor at New Horizons, Edmiston had counseled between 25 and 30 children who had been sexually abused. For the eight months prior to the trial, Edmiston had counseled the complainant on a weekly basis. Thus, the trial court was presented with ample evidence to support an implied finding that the subject matter of Edmiston's testimony was within the scope of her field.

Finally, we conclude that Edmiston's testimony properly relied upon or utilized the principles in her field. Her opinions regarding the symptoms exhibited by sexually abused children were based on her advanced educational experience, her experience as both a volunteer and an intern at HAWC, her knowledge gained through her continuing education classes, and, primarily, her experience as a counselor at New Horizons, where she had counseled children who had been sexually abused. Furthermore, because Edmiston had counseled the complainant for the eight months prior to trial, Edmiston was in a position to observe the complainant's behavior. Although appellant asserts that Edmiston, through her testimony, had to show the trial court "something through literature, through medical experience, working in conjunction with doctors, psychologists, or psychiatrists" in order to be qualified to testify regarding the symptoms exhibited by sexually abused children, the evidence of Edmiston's education, training, and experience discussed above provide a sufficient basis for the trial court to have found that her testimony was reliable. The absence of studies quantifying or providing a statistical analysis does not affect the reliability and, therefore, admissibility, of her testimony but only affects the weight of the evidence. *Hernandez,* 53 S.W.3d at 749–50.

Our review in regard to a trial court's ruling on the reliability of expert testimony focuses on whether the trial court acted without reference to the pertinent guiding rules or principles. *Id.* at 752. Here, we cannot conclude that the trial court failed to act with reference to guiding rules and principles in determining that Edmiston was qualified to render an opinion on whether the complainant had exhibited symptoms consistent with those generally exhibited by sexually abused children, and, therefore, we will not disturb its ruling. *See Morales v. State,* 32 S.W.3d 862, 865–66 (Tex.Crim.App.2000). Accordingly, we hold that the trial court did not abuse its discretion in admitting Edmiston's testimony regarding the behavioral symptoms generally exhibited by sexually abused children and that the complainant had exhibited such symptoms.

We overrule appellant's sole point of error.

## Conclusion

We affirm the judgment of the trial court.