

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

---

No. 02-17-00415-CR
No. 02-17-00416-CR
No. 02-17-00417-CR

---

ROBERTO GUTIERREZ, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court Nos. 1404391D, 1404390D, 1404387D

---

Before Sudderth, C.J.; Gabriel and Womack, JJ.
Memorandum Opinion by Justice Gabriel

## MEMORANDUM OPINION

Appellant Roberto Gutierrez appeals his convictions for burglary of a habitation, aggravated kidnapping, and aggravated sexual assault. *See* Tex. Penal Code Ann. §§ 20.04, 22.021, 30.02. After a jury found him guilty, the trial court sentenced him to thirty years' confinement for each offense. Appellant argues that the trial court abused its discretion by allowing the State's trauma-therapy expert to testify about traumatic experiences and the typical behaviors of victims of such crimes. Because we conclude that the trial court did not abuse its discretion by admitting the expert's testimony, we affirm the trial court's judgments.

## I. BACKGROUND

### A. THE OFFENSE

In the early hours of February 22, 2015, E.K.[1] was in bed watching television when she heard several loud noises. A man, whom E.K. later identified as Appellant, broke open E.K.'s front door, threatened her with a knife, and forced her to lie down on her bed. Appellant tied E.K.'s hands with rope, put a glove in her mouth because "he [did not] want [her] to scream," and tied her legs with a shirt that he found in her bedroom. After removing E.K.'s clothing, Appellant put his hands and mouth on her sexual organ at knife point and forcibly penetrated her mouth with his penis until he ejaculated. Appellant then told E.K. that he would untie her but that if she screamed

---

[1]We use an alias to refer to the complainant. *See* Tex. R. App. P. 9.8 cmt.; 2d Tex. App. (Fort Worth) Loc. R. 7.

2

or ran, he would kill her. Appellant removed his clothes and penetrated her sexual organ with his penis before again forcing her to perform oral sex until he ejaculated. E.K. tried to escape when Appellant went to the bathroom, but she could not because he had blocked the front door with furniture. Appellant grabbed E.K., and she said that "he hurt [her] right in the face while struggling with him."

Appellant later watched E.K. while she showered and got dressed. When E.K. asked him to leave so she could go to church, Appellant refused. E.K. then changed tactics and asked him if she could go to the store to buy groceries. After confirming that E.K. had no food in her kitchen, Appellant agreed that they could walk to 7-11 for cigarettes, but he took his knife with him. E.K. did not try to escape because he remained armed and because she did not think she could outrun him.

After leaving 7-11, Appellant let E.K. call a taxi to take them to Walmart. Although she tried to alert the driver, he did not notice and dropped them off at Walmart. Once inside, E.K. began looking for someone who could help her. E.K. approached David Dooley—an electronics-section employee—and asked for help. Clutching him and trembling, E.K. told Dooley how Appellant broke into her house and "had [her] in [her] apartment since 1:00 a.m." Appellant tried to go around Dooley while reaching in his pocket for his knife, but Dooley told him to back off. Appellant then walked away and left Walmart. Upon his arrest, Appellant provided the police a false name and pretended not to understand English.

3

## B. TRIAL

At trial, the evidence showed that Appellant had left his fingerprints in E.K.'s apartment and that his DNA profile matched the DNA found during E.K.'s sexual-assault exam and in her apartment, which was consistent both with E.K.'s testimony about the assault and with Appellant's theory that their sexual relations had been consensual. The State proffered Susie Stewart as an expert witness on trauma-victim issues, including trauma behavior, trauma memory, and how E.K.'s post-assault conduct was consistent with someone suffering from trauma.

The trial court conducted a hearing outside the presence of the jury at Appellant's request to determine whether Stewart could testify as an expert. Stewart has a master's degree in social work and has worked as a clinical therapist for the Tarrant County Women's Center for approximately eight years. She testified that "trauma-informed care" is recognized in the field of social work, well researched, and practiced throughout the country by counselors and therapists like her. Stewart used her prior experiences from working with hundreds of trauma victims—combined with watching surveillance footage of E.K. at 7-11 and Walmart and E.K.'s police interview—to testify about trauma behavior, trauma memory, and how E.K.'s conduct was consistent with that of trauma victims. Stewart testified that her testimony was based upon her experiences as a licensed clinical social worker at the Tarrant County Women's Center where she teaches trauma-related classes and exclusively counsels crime victims. Her opinions also were based on the Diagnostic

and Statistical Manual of Clinical Disorders and on "numerous medical studies." The trial court overruled Appellant's objections, finding that Stewart's "field of expertise [was] a legitimate one," the subject matter "[was] within the scope of that field," and Stewart was "a qualified expert in this particular field." Stewart was then allowed to testify before the jury.

## II. EXPERT TESTIMONY

Appellant argues in two issues that the trial court abused its discretion by allowing Stewart to give her opinion based on her experience as a trauma therapist because it "cannot be empirically validated," did not "assist the trier of fact," and "invaded the purview of the jury." *See* Tex. R. Evid. 702, 703. In other words, Appellant asserts that Stewart's testimony was not reliable or relevant. We review a trial court's decision to admit expert testimony for an abuse of discretion. *See Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005). As such, we will not disturb the trial court's ruling if it was within the zone of reasonable disagreement. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011).

### A. STEWART'S TESTIMONY WAS RELIABLE

Appellant argues that Stewart's testimony was unreliable because it "wholly abandoned any standards for verification, efficacy, or truthfulness." He further argues that because Stewart's testimony was "purely anecdotal," it "cannot be verified using any scientific measurement or process."

5

Under the rules of evidence, testimony requiring scientific, technical, or specialized knowledge is admissible if three conditions are met: (1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will assist the fact-finder in deciding the case. *See* Tex. R. Evid. 702; *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006). Appellant only challenges the latter two here.

To show reliability for "soft sciences"[2] such as Stewart's, the proper questions are: "(1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the expert's testimony is within the scope of that field, and (3) whether the expert's testimony properly relies upon and/or utilizes the principles involved in the field." *Coble v. State*, 330 S.W.3d 253, 274 (Tex. Crim. App. 2010).

The behavior of trauma victims has been held to be a legitimate field of expertise. *See, e.g., Cohn v. State*, 849 S.W.2d 817, 818 (Tex. Crim. App. 1993) (recognizing research concerning the behavioral characteristics of sexually abused children as a legitimate field of expertise); *Mulvihill*, 177 S.W.3d at 413 (recognizing research concerning the effect of sexual abuse on children as a legitimate field of

---

[2]Although Appellant's reliability trial objections relied on the stricter standard, which is applicable to scientific testimony, the trial court overruled the objections under the soft-sciences standard. *See Rhomer v. State*, No. PD-0448-17, 2019 WL 408186, at *4–5 (Tex. Crim. App. Jan. 30, 2019); *see also Mulvihill v. State*, 177 S.W.3d 409, 413–14 (Tex. App.—Houston [1st Dist.] 2005, pet ref'd) (applying less rigor to nonscientific testimony about symptoms of sexual abuse).

expertise). And Stewart sufficiently showed that her testimony was within the scope of the field and that she properly relied upon that field's principles. *See* Tex. R. Evid. 703. We conclude that the trial court did not abuse its discretion by finding that Stewart's testimony was reliable and overrule Appellant's first issue.

## B. STEWART'S TESTIMONY ASSISTED THE FACT-FINDER

Appellant argues in his second issue that Stewart's testimony did not assist the jury because she "contend[ed] that people claiming to be traumatized are a class of persons worthy of belief," which was "essentially telling the jury they can believe the victim in the instant case as well." Appellant contends that this impermissibly resulted in an "expert's global attribution of credibility based solely on membership within a class."

Expert testimony must assist the trier of fact in understanding the evidence or in determining a fact at issue to be admissible. *See* Tex. R. Evid. 702. Such testimony assists the trier of fact when a jury would not be qualified to intelligently determine the issue without the expert's testimony. *See Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997). "But, the expert testimony must aid—not supplant—the jury's decision." *Id.*

In this case, Appellant raised a material issue concerning whether any offense occurred based on his assertion that all sexual acts were consensual. Beginning in his opening statement, Appellant's counsel clearly described the defensive theory that the sexual encounters alleged were consensual, characterizing one act as a "sexual fantasy"

for E.K. Appellant raised the issue of whether a sexual assault had occurred and thus whether E.K. was a victim.

Although Stewart never personally spoke with E.K., Stewart concluded that E.K.'s behavior was consistent with a victim of trauma based on her review of the surveillance videos and E.K.'s police interviews. Regarding the 7-11 video, Stewart testified that a close relationship between E.K. and Appellant was not apparent "due to the victim's physical distance and demeanor." Stewart explained that E.K. stayed with Appellant because she was "in freeze mode," which occurs if a victim cannot decide if it is safe to run from her captor. And Stewart testified that E.K.'s behavior on the Walmart surveillance video was "consistent with victims" because it appeared she was looking for "a possible opportunity . . . to make an escape or to find safety." Stewart also explained that E.K.'s memory lapses during her police interviews were caused by E.K.'s physical trauma. Stewart opined that after viewing all of the evidence, E.K.'s behavior was "consistent with someone who has seen trauma and reacted to trauma."

Because Appellant asserted at trial that E.K. had consented to sexual intercourse with him, Stewart's expert opinion regarding E.K's emotional state assisted the fact-finder on a fact at issue in the case. *See, e.g.*, *Key v. State*, 765 S.W.2d 848, 850 (Tex. App.—Dallas 1989, pet. ref'd). Additionally, an expert may compare general or classical behavioral characteristics of a certain type of victim with a specific victim's behavior patterns. *See Fielder v. State*, 756 S.W.2d 309, 321 (Tex. Crim. App.

8

1988); *Scugoza v. State*, 949 S.W.2d 360, 363 (Tex. App.—San Antonio 1997, no pet.); *see also Nwaiwu v. State*, No. 02-17-00053-CR, 2018 WL 3763899, at *3 (Tex. App.—Fort Worth Aug. 9, 2018, pet. ref'd) (mem. op., not designated for publication). We conclude that the trial court did not abuse its discretion by finding that Stewart's testimony would assist the fact-finder and overrule Appellant's second issue.

### III.  CONCLUSION

Stewart's expert testimony was reliable and assisted the fact-finder to determine a fact at issue; therefore, it was admissible and the trial court did not abuse its discretion by so finding. We overrule Appellant's issues and affirm the trial court's judgments. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

Lee Gabriel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  March 28, 2019

9