

# NUMBER 13-19-00132-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

VICTOR HERNANDEZ,                                                      Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.

### On appeal from the 92nd District Court
### of Hidalgo County, Texas.

## MEMORANDUM OPINION

**Before Justices Benavides, Hinojosa, and Silva**
**Memorandum Opinion by Justice Hinojosa**

Following a jury trial, appellant Victor Hernandez was convicted of four counts of indecency with a child by contact, a second-degree felony. *See* TEX. PENAL CODE ANN. § 21.11(a)(1). The trial court assessed concurrent ten-year prison sentences for each count. In one issue, Hernandez argues that the trial court abused its discretion in overruling his objection to the State's expert witness. We affirm.

## I.  BACKGROUND

## A.  Outcry Testimony

In June 2017, the complainant S.H.,[1] then ten years old, disclosed to her mother J.A. that Hernandez touched her "private" and her breasts on multiple occasions. According to J.A., Hernandez is S.H.'s uncle and the owner of a *taqueria* in Alamo, Texas where J.A. worked. In addition, the two families resided together through the date of S.H.'s outcry.

S.H. told J.A. that Hernandez touched her inappropriately at their residence and at the *taqueria*. S.H. specifically recalled an occasion in June 2017 when Hernandez motioned S.H. into the kitchen of the *taqueria* and proceeded to touch S.H.'s breast and "private." S.H. disclosed another incident in May 2017, when she went to a trampoline park with Hernandez and his children before returning to the *taqueria* where they stayed the night. On this occasion, S.H. described Hernandez touching her "private" under her panties using two fingers.

Following S.H.'s disclosure, J.A. sought medical attention for S.H. and filed a police report. J.A. also stated that S.H. received counseling in relation to the alleged abuse.

After being examined at a health clinic, S.H. was referred to Doctor's Hospital at Renaissance. Evonne Garcia, a registered nurse and certified sexual assault nurse examiner (SANE), performed a SANE examination. During the examination, S.H. described for Garcia the initial incident at the *taqueria*. S.H. also disclosed that Hernandez

---

[1] We refer to the minor complainant and her mother by their initials to protect their privacy. *See* TEX. R. APP. P. 9.8 cmt. ("The rule [protecting the privacy for filed documents in civil cases] does not limit an appellate court's authority to disguise parties' identities in appropriate circumstances in other cases."); *Salazar v. State*, 562 S.W.3d 61, 63 n.1 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.).

"kept touching me" after that. S.H. stated that Hernandez would touch her private part, while pointing to her sexual organ. S.H. explained that Hernandez "would sometimes take down my shorts or sometimes he would put his hand inside my shorts and then he would use two fingers . . . [a]nd put them in my part." S.H also stated that Hernandez touched her breast. S.H. told Garcia that Hernandez continued touching her in this manner until June 22, 2017. After taking S.H.'s history, Garcia performed a physical examination but documented no injuries.

Sara Elizabeth Mungia, a forensic interviewer for the Children's Advocacy Center (CAC), interviewed S.H. Through Mungia's testimony, the State introduced anatomical drawings on which S.H. identified where Hernandez touched her. The trial court admitted the exhibits, and they were published to the jury.

**B.    S.H.'s Testimony**

S.H., who was twelve at the time of trial, testified that she spent time at the *taqueria* while her mother was working. During this time, S.H. played with her brother and watched television. S.H. testified that Hernandez touched her breast and "private" on multiple occasions. She described Hernandez using two fingers to touch her sexual organ. S.H. stated that one of the incidents occurred at the *taqueria* after Hernandez motioned for her to come into the kitchen. She testified that Hernandez touched her breast and "private" on two other occasions in the kitchen of the *taqueria*. According to S.H., Hernandez told her not to tell anyone because Hernandez would go to jail and her mother would be taken to Mexico.

**C.     Juan Chapa**

**1.     Gatekeeping Hearing**

The State called Juan Chapa, a licensed professional counselor intern (LPC intern) and S.H.'s counselor. As Chapa began to describe his qualifications, defense counsel requested to voir dire Chapa outside the jury's presence. After the jury exited, defense counsel argued as follows:

> Your Honor, our concern is that he'll be proffering testimony outside his level of expertise. He testified initially that he's a licensed professional counselor intern which suggests that he is not fully licensed and/or is working subject to being supervised by someone who is licensed. We want to voir dire him on his training, whether he'll be offering opinions that are kind of a scientific basis, whether they're reliable, whether the training he's received—he has testified that he's got a thousand hours, or a thousand and change, of hours compared to a few thousand hours he needs to be fully licensed. I need to find out how it works. Including [whether Chapa will] discuss issues such as grooming or other issues that are typical in child abuse cases, Your Honor.

At the trial court's direction, the State then questioned Chapa concerning his qualifications. Chapa stated that he has received a bachelor's degree in criminal justice and a Master of Science degree in rehabilitation counseling. Through his master's program, Chapa received training in making a psychiatric diagnosis. Chapa was later certified by the State of Texas in rehabilitation counseling, and he currently holds the designation, LPC intern. To become a full-fledged LPC, an intern must complete 3,000 hours of supervised work by a licensed therapist. Of those hours, 1,500 involve direct patient contact, and 1,500 involve research and case management. Chapa still requires 300 additional hours of supervised work before he becomes an LPC. Under his current designation, Chapa is authorized to provide counseling services, but he is prohibited from making a diagnosis.

4

Chapa worked for the CAC for almost two years, providing counseling to children and families. In this position, he worked on approximately sixty-five child sexual abuse cases, received ninety-four hours of trauma-informed therapy training, thirty-eight hours of trauma-focused cognitive behavioral therapy training, participated in eighty-four hours of peer review constellations in trauma cases, and performed eighty-eight supervised consultations. Chapa described cognitive behavioral therapy as an evidence-based treatment focusing on helping children and their families to understand trauma. With respect to those children who have been sexually abused, Chapa stated that his treatment involved talking about the symptoms presenting in the child and helping them cope with those symptoms.

Following defense counsel's questions regarding Chapa's inability to diagnose a patient, the following colloquy took place regarding the scope of the witness examination:

| Prosecutor: | I'm not intending to get into any diagnoses because of this case, Your Honor. I'm asking, in general, principles of victims of sexual abuse that he has experienced, Judge. He testified that he had a caseload of 65 patients. He testified about his background, his education. . . . |
|---|---|
| The Court: | Right. So long as—if you keep those questions, generally, what are the symptoms or some of the signs or things that you see in, you know, that you've seen, you know, based on your education. If you keep it with that and then you ask him about the session without getting into, so, what was your conclusion? Was this child an actual victim? You know, as long as you stay away from that, I think that's perfectly fine. |
| | . . . . |
| | [H]e's basically pointed that out, that he's not yet able to make those diagnosis. [sic] So, as long as we stay |

5

away from that. Generally and what interactions he had with this particular victim without, you know, making any conclusions, forming any opinions or giving any diagnosis, I mean, I'll permit that.

[Prosecutor]: Your Honor, and as long as [defense counsel] doesn't open the door.

The Court: Yeah. Well, that's another story all together. But in your direct, so long as you don't get into it in your direct. And if you believe that [defense counsel] has opened the door, I would ask you to first approach so that we can make that determination before we start getting into that in front of the Jury.

[Prosecutor]: Yes, Your Honor.

The Court: Okay? All right. [Defense Counsel]?

[Defense Counsel]: Yes, Your Honor[.]

The Court: We're on the same page?

[Defense Counsel]: Yes, Your Honor.

## 2. Trial Testimony

After the jury returned, Chapa restated his credentials. He then described the treatment he provided as a CAC counselor:

We talked about what sexual abuse means, understand what it is, what it consists of and why it happened. And then we talk about the symptoms that were presenting on the child. So how can we cope with that. Help them, teach them how to cope with that and understand it. A lot of times when this happens to children they'll have misunderstandings about themselves and their lives.

Chapa stated that it is important for victims of child sexual abuse to attend counseling because they are often confused or manipulated, which causes them to question their self-worth. Chapa teaches children coping mechanisms such as relaxation

6

and deep breathing exercises. Chapa stated that he helps children challenge their negative thoughts about themselves. Chapa described the following signs of sexual abuse: changing moods, overeating or undereating, isolation, loss of interest, nightmares, and withdrawal. Chapa stated that it was possible for parents not to notice the signs of abuse.

Based on his experience, Chapa opined that children commonly delay disclosing sexual abuse because they are afraid of what will happen or they may have been threatened. Chapa also explained that children may only partially disclose the extent of the abuse for similar reasons.

Chapa testified that he provided weekly counseling to S.H. He described the counseling as trauma-focused cognitive behavioral therapy, which is intended to help the child increase their self-esteem and confidence levels.

## D.    Defense Expert Edward Acosta

Edward Acosta, an LPC and former investigator for Child Protective Services, testified that he reviewed the CAC's video interview of S.H. Acosta noted that Mungia, the interviewer, was wearing an earpiece and was receiving information from outside of the interview room. Acosta believed this affected the integrity of the interview. Acosta also believed that Mungia did not ask S.H. enough detailed questions. Acosta opined that the delay between S.H.'s initial outcry and the CAC interview also affected the integrity of the process. On cross-examination, Acosta conceded that he had not been a forensic interviewer in over nineteen years and that he was unfamiliar with the current standards for such interviews.

7

**E.     Jury Verdict**

The jury found Hernandez guilty on four counts of indecency with a child by contact. *See id*. § 21.11(a)(1). This appeal followed.

## II.     DISCUSSION

In his sole issue, Hernandez argues the trial court abused its discretion in "allowing the State's expert testimony of Juan Chapa."

**A.     Standard of Review & Applicable Law**

We review a trial court's decision to admit or exclude expert testimony for an abuse of discretion. *Wolfe v. State*, 509 S.W.3d 325, 335 (Tex. Crim. App. 2017). We will uphold a trial court's ruling if it is within the zone of reasonable disagreement. *Id*. Under the rules of evidence, testimony requiring scientific, technical, or specialized knowledge is admissible if three conditions are met: (1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will assist the fact finder in deciding the case. *See* TEX. R. EVID. 702; *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006). Respectively, these three requirements are commonly referred to as (1) qualification, (2) reliability, and (3) relevance. *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006). The three requirements raise distinct questions and issues, and an objection based on one does not preserve error as to another. *Shaw v. State*, 329 S.W.3d 645, 655 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *see* TEX. R. APP. P. 33.1(a)(1); *see also Ramirez v. State*, No. 03-19-00540-CR, 2021 WL 1555093,

8

at *3 (Tex. App.—Austin Apr. 21, 2021, no pet. h.) (mem. op., not designated for publication).

## B.    Analysis

Hernandez argues on appeal that Chapa's testimony was inadmissible because he was not qualified and that his testimony did not meet the relevance requirement. We note that Hernandez did not lodge a relevancy objection at trial; therefore, he has not preserved the argument for appeal.[2] *See* TEX. R. APP. P. 33.1(a)(1); *Shaw*, 329 S.W.3d at 655. Accordingly, we will restrict our analysis to Hernandez's qualification argument.[3]

The specialized knowledge that qualifies a witness to offer an expert opinion may be derived from specialized education, practical experience, a study of technical works, or a combination of these things. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019); *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000). A witness must have a sufficient background in a particular field, but a trial court must also determine whether that background goes to the very matter on which the witness is giving an opinion. *Rhomer*, 569 S.W.3d at 669; *Vela*, 209 S.W.3d at 131. In other words, the expert's background must be tailored to the area of expertise covered by the expert's intended testimony. *Rhomer*, 569 S.W.3d at 669; *Vela*, 209 S.W.3d at 33.

---

[2] Texas courts have long held that testimony by an expert witness that a child exhibits behavioral characteristics common among sexual abuse victims is both relevant and admissible. *See Cohn v. State*, 849 S.W.2d 817, 819–21 (Tex. Crim. App. 1993); *Flores v. State*, 513 S.W.3d 146, 172 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *Vasquez v. State*, 975 S.W.2d 415, 417 (Tex. App.—Austin 1998, pet. ref'd); *see also Lee v. State*, No. 12-19-00265-CR, 2020 WL 5406145, at *3 (Tex. App.—Tyler Sept. 9, 2020, no pet.) (mem. op., not designated for publication); *Ficarro v. State*, No. 13-03-00439-CR, 2007 WL 1218045, at *12 (Tex. App.—Corpus Christi–Edinburg Apr. 26, 2007, pet. ref'd) (mem. op., not designated for publication).

[3] At trial Hernandez appears to have also raised an objection to the reliability of Chapa's testimony. However, he does not raise this argument on appeal.

The trial court determined that Chapa was qualified to render an expert opinion in a very specific area: the symptoms and signs of child sexual abuse. We note that Chapa's credentials focus primarily on counseling children with trauma, with a particular focus on child sexual abuse cases. In particular, Chapa received a graduate degree in rehabilitation counseling, is certified by the State of Texas to provide rehabilitation counseling, and has completed 2,700 of the 3,000 hours of supervised work to become an LPC. Most notably, Chapa has worked with child sex abuse victims for almost two years and on approximately sixty-five cases in that time span. Chapa has further received over one hundred hours of training in trauma therapy.

Hernandez acknowledges Chapa's credentials but notes that Chapa was not yet an LPC, carrying the designation of an LPC intern. Hernandez argues that Chapa's testimony should have been limited to the number of therapy sessions he had with S.H. We disagree. The primary restriction imposed by Chapa's status as an LPC intern was his inability to diagnose patients. The trial court considered this factor and limited the permissible scope of testimony accordingly. At any rate, Chapa's inability to diagnose patients has no bearing on whether he was qualified to opine on signs of child sexual abuse. *See Gregory v. State*, 56 S.W.3d 164, 180–81 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd) (explaining that the determination of whether an expert is qualified on a particular subject "is not dependent on the ability to practice medicine, prescribe treatment or make a diagnosis"); *Harnett v. State,* 38 S.W.3d 650, 659 (Tex. App.—Austin 2000, pet. ref'd) (explaining that licensure or certification in a particular discipline is not a requirement for expert qualification); *see also Walker v. State*, No. 12-14-00104-CR, 2015

10

WL 5139342, at *2 (Tex. App.—Tyler Sept. 2, 2015, no pet.) (mem. op., not designated for publication) (concluding that an LPC intern was qualified to testify regarding the phases and signs of child sex abuse). Chapa's background demonstrates that he was qualified to opine on matters of child sexual abuse by virtue of his education, practical experience, and vocational training. *See Rhomer*, 569 S.W.3d at 669. Further, Chapa's credentials are tailored to the narrow area of testimony permitted by the trial court. *See id*.

For the foregoing reasons, we conclude that the trial court did not abuse its discretion in concluding that Chapa was qualified to render an expert opinion on these matters. *See Wolfe*, 509 S.W.3d at 335; *Mulvihill v. State*, 177 S.W.3d 409, 414 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (concluding that the complainant's counselor was qualified to testify about the symptoms exhibited by sexually abused children). Further, to the extent Hernandez complains that Chapa's trial testimony exceeded the scope of the trial court's ruling, he has failed to preserve this argument for appeal because he did not object at trial on this basis. *See* TEX. R. APP. P. 33.1(a)(1). We overrule Hernandez's sole issue.

### III.   CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
20th day of May, 2021.